**KAZEROUNI LAW GROUP, APC**
Ryan L. McBride, Esq. (SBN: 297557)
ryan@kazlg.com
Jonathan Gil, Esq. (SBN: 347431)
jonathan@kazlg.com
2221 Camino Del Rio S., #101
San Diego, California 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiffs,*
Crystal Howard and Mariana Torres

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CRYSTAL HOWARD and MARIANA TORRES, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**FAROUK SYSTEMS, INC.,**<br><br>**Defendant.** | **Case No.:**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>1) **CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA"), CAL. CIV. CODE §§ 1750, *ET SEQ.*;**<br>2) **CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*;**<br>3) **VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL"), CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*;**<br>4) **BREACH OF EXPRESS WARRANTY**<br>5) **UNJUST ENRICHMENT;**<br>6) **NEGLIGENT MISREPRESENTATION; AND,**<br>7) **INTENTIONAL MISREPRESENTATION.**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.    Plaintiffs Crystal Howard ("Plaintiff Howard") and Mariana Torres ("Plaintiff Torres") (together, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of defendant Farouk Systems, Inc. d/b/a CHI and BioSilk ("Farouk" or "Defendant") concerning unlawful labeling of Defendant's haircare products, with: a) the designation and representation that the products are more "natural" than they actually are; and b) the designation and representation that the products are/were made in the USA without clear and adequate qualification of the foreign ingredients and components contianted therein, as required by federal rules and California laws.

2.    These misrepresented products are sold through various channels, including, but not limited to, direct-to-consumer sales on the Defendant's website, third-party platforms such as Amazon.com ("Amazon"), professional hair care salons, and third-party merchants operating brick-and-mortar stores like Marshalls.

3.    Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by their attorneys.

4.    As stated by the California Supreme Court in *Kwikset v. Superior Court*, 51 Cal. 4th 310, 328-29 (2011):

> **Simply stated: labels matter.** The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities that may come to associate with a particular source. . . .In particular . . . **the "Made in U.S.A." label matters**. A range of motivations may fuel this preference, from desire to support domestic jobs or labor conditions, to simply patriotism. The Legislature has recognized the materiality of this representation by specifically outlawing deceptive   and   fraudulent   "Made   in   America"

representations. (Cal. Bus & Prof. Code section 17533.7; see also Cal. Civ. Code § 1770, subd. (a)(4) (prohibiting deceptive representations. Of geographic origin)). The objective of section 17533.7 "is to protect consumers from being misled when they purchase products in the belief that they are advancing the interest of the United States and the industries and workers. . ." (emphasis added).

5.    Farouk's products are labeled with the express, unqualified representation that they are "Made in the USA," (or another synonomous phrase) either on the Principal Display Panel ("PDP") or another prominent and conspicuous location on the product label. This claim appears on all or nearly all products manufactured, sold, or distributed by the Defendant, including the products purchased by the Plaintiffs.

6.    Contrary to Defendant's express representations and its failure to clearly and adequately qualify those representations, the products purchased by Plaintiffs are substantially and materially composed of indispensable foreign ingredients and components.

7.    Plaintiffs purchased some of Farouk's best know products including: CHI Infra Silk Infusion,  CHI Reconstructing Shampoo, CHI Infra Protective Thermal, and CHI Infra Moisture Therapy Shampoo, all of which are labeled, marketed and sold to consumers as "Made in the USA", as further discussed herein.

8.    In addition to the unqualified "Made in the USA" representations on the PDP of all of Farouk's products, Defendant claims certain products are more "natural" than they actually are.

9.    The products purchased by Plaintiff Howard are made with numerous synthentic ingredients despite being represented as 90% (or more) natural and all are made with numerous ingredients and components, that are not grown, sourced or otherwise made in the United States, despite being labeled as "Made in the USA" without qualification.

10.    Defendant's conduct of advertising and selling deceptively labeled products bearing the representation that such products are 90% or more natural violates: (1)

California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.; (2) California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*.; (3) California's False Advertising Law ("FAL"), Bus. & Prof. Code § 17500, *et seq*.; and constitutes (4) breach of express warranty; (5) unjust enrichment; (6) negligent misrepresentation; and (7) intentional misrepresentation.

11.    Defendant's conduct of advertising and selling deceptively labeled products bearing the representation that such products are "Made in the USA" without qualification violates: (1) the CLRA; (2) the UCL; (3) the FAL; (4) 16 C.F.R. § 323 (Federal Trade Commission 2021) (the "MUSA Rule") and constitutes (5) breach of express warranty; (6) unjust enrichment; (7) negligent misrepresentation; and (8) intentional misrepresentation.

12.    This conduct caused Plaintiffs, and other similarly situated consumers, damages, and requires restitution and injunctive relief to remedy and prevent future harm.

13.    In addition to the unqualified "Made in the USA" representation on the products purchased by Plaintiffs, Farouk's other haircare products—including, but not limited to, those listed in **Exhibit A** and featured on Farouk's website[1] (the "MUSA Products")—also display the same unqualified "Made in the USA" representation or a similar unqualified U.S. origin claim.

14.    Furthermore, in addition to the "natural" misrepresentations on the products purchased by Plaintiff Howard, numerous of Farouk's other haircare products—including, but not limited to, those listed in **Exhibit A** and featured on Farouk's website (the "Natural Products" and together with the MUSA Products, the "Class Products")—also display the same false percentage "natural" misrepresentations.

## JURISDICTION AND VENUE

---

[1] *See* https://chi.com/shop/categories/hair-care/ (last accessed on February 20, 2025)

15.    This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), because: (1) there is minimal diversity, including because Plaintiffs are citizens of the State of California and Defendant is a Texas corporation with its headquarters and principal place of business in Texas; (2) the amount in controversy in this matter exceeds $5 million , exclusive of interest and costs; and (3) there are more than one hundred (100) people in the putative class.

16.    Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff Torres resides in the County of San Bernardino, State of California, which is within this judicial district; (ii) a substantial part of the conduct complained of herein occurred within this judicial district; and (iii) Defendant conducted business within this judicial district at all times relevant.

## PARTIES

17.    Plaintiff Howard is, and at all times mentioned herein was, a natural person, an individual citizen and resident of the City of Elk Grove, County of Sacramento, State of California.

18.    Plaintiff Torres is, and at all times mentioned herein was, a natural person, an individual citizen and resident of the City of Montclair, County of San Bernardino, State of California.

19.    Upon information and belief, Defendant is a corporation that is organized and exists under the laws of the State of Texas, with its principal place of business within the State of Texas located at 250 Pennbright Drive, Houston, Texas 77090.

20.    Defendant is a manufacturer, distributor and seller of hair care products that conducts business: a) through its website; b) through the websites of third-party vendors, such as Amazon; and c) distributes its products to be sold in brick and mortar stores, such as Marshalls, as well hair care establishments.

21.    At all relevant times. Defendant conducted business within the State of California, in the County of San Bernardino, and within this judicial district.

22.    Unless otherwise indicated, the use of Defendant's names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendant, respectively.

## NATURE OF THE CASE

23.    Having been in business since 1986, Defendant is among the leading hair care companies in the United States.[2]

24.    Defendant markets and sells a wide portfolio of hair care products for both women and men through multiple distribution channels under two sub-brands: CHI and BioSilk.

25.    Given its long history in the consumer products industry, along with its vast resources and operational sophistication, it is difficult to understand how Defendant could so blatantly violate the well-established laws, rules, and regulations governing the use of "Made in the USA" or any derivative thereof, or mislead consumers regarding the amount of "natural" ingredients in its products.

26.    At all relevant times, Defendant made and continues to make material misrepresentations regarding the Class Products.

27.    Specifically, Defendant advertised, marketed, promoted, and sold the MUSA Products as "Made in the USA" without disclosing the use of foreign ingredients, when in fact this claim was false, unfair and deceptive.

28.    Although Defendant represented that the MUSA Products were "Made in the USA" without qualification, the products are wholly or substantially made with ingredients and components sourced, grown, or manufactured outside the United States.

29.    Each consumer, including Plaintiffs, was exposed to the same material misrepresentations, as similar labels were placed on all MUSA Products sold—and currently sold—throughout the United States, including in California.

---

[2] *See* https://farouk.com/about-us/company-overview/ (last accessed on February 20, 2025)

30. Federal rules and regulations regarding the use of "Made in the United States" claims— including any synonymous claims, whether express or implied— are well-established and clearly defined with respect to products and services.

31. The MUSA Rule clearly defines the meaning of "Made in the United States"[3] and outlines when this designation may be used without qualification. Specifically, clear and adequate qualifications must notify consumers if the good or service contains or is made with ingredients or components that are not made or sourced in the United States.[4]

32. As a consequence of Defendant's unfair and deceptive practices, Plaintiffs and other similarly situated consumers purchased the MUSA Products under the false impression and in reliance upon Defendant's representations that the MUSA Products were actually made in the United States with ingredients and components sourced from within the United States.

33. As a result, Plaintiffs and other similarly situated consumers overpaid for the MUSA Products, purchased the MUSA Products over the products of competitors, and/or purchased the MUSA Products under the belief that the products were made in the United States and did not contain numerous ingredients and components from outside the United States.

34. Despite the clearly established and well-defined federal rules regarding "Made in the United States" claims, Defendant falsely, unfairly and deceptively

---

[3] *See* 16 C.F.R. § 323.1(a) ("The term Made in the United States means **any unqualified representation,** express or implied, **that a product or service**, or a specified component thereof, **is of U.S. origin**, including, but not limited to, a representation that such product or service is "made," "manufactured," "built," "produced," "created," or "crafted" in the United States or in America, or any other unqualified U.S.-origin claim.") (emphasis added).

[4] *See* 16 C.F.R. § 323.2 Prohibited Acts ("In connection with promoting or offering for sale any good or service, in or affecting commerce as "commerce" is defined in section 4 of the Federal Trade Commission Act, 15 U.S.C. 44, **it is an unfair or deceptive act or practice** within the meaning of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. 45(a)(1), **to label any product as Made in the United States unless** the final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, and **all or virtually all ingredients or components of the product are made and sourced in the United States**. (emphasis added).

advertised, marketed and sold its products, including the products purchased by Plaintiffs, as "Made in the USA" without clear and adequate qualification informing consumers of the presence of foreign ingredients and/or components as further discussed herein.

35.    Had Plaintiffs and other consumers similarly situated been made aware that the MUSA Products contained a substantial amount of ingredients sourced from outside of the United States, they would not have purchased them.

36.    As a result of Defendant's false, unfair, and deceptive statements and/or their failure to disclose the true nature of the MUSA Products, along with the other conduct described herein, Plaintiffs and similarly situated consumers suffered harm through the purchase of hundreds of thousands of units of the MUSA Products across the United States, including in California.

37.    In addition to the unfair and deceptive representations regarding the MUSA Products, Defendant labeled, marketed, and advertised certain products—such as those purchased by Plaintiff Howard—as containing a specific percentage of "natural" ingredients, often claiming to be highly natural (85% or more), when in fact, this was not the case.

38.    Despite its express representation that the Natural Products are made with a high percentage of natural ingredients, these representations are false.

39.    Defendant characterized many synthetic ingredients used in the Natural Products as "natural" in order to falsely and deceptively represent high natural percentages on the PDP of the Natural Products, as discussed herein.

40.    Consumers, including Plaintiff Howard, were exposed to the same material misrepresentations, as similar labels were placed on all Natural Products sold—and currently sold—throughout the United States, including in California.

41.    As a consequence of Defendant's unfair and deceptive practices, Plaintiff Howard and other similarly situated consumers purchased the Natural Products under the false impression and in reliance upon Defendant's representations that the

Natural Products contained more natural ingredients than they actually do.

42.    As a result, Plaintiff Howard and other similarly situated consumers overpaid for the Natural Products, purchased the Natural Products over the products of competitors, and/or purchased the Natural Products under the belief that the products they purchased were more natural than they actually are.

43.    Had Plaintiff Howard and other similarly situated consumers known that the Natural Products contained fewer natural ingredients than the percentages represented on the PDPs, they would not have purchased the Natural Products.

44.    As a result of Defendant's false, unfair, and deceptive statements, and/or their failure to disclose the true percentage of natural ingredients in the Natural Products, along with the other conduct described herein, Plaintiff Howard and similarly situated consumers purchased hundreds of thousands of units of the Natural Products across the United States, including in California, and have suffered, and continue to suffer, harm, including the loss of money and/or property.

45.    Defendant's conduct regarding the labeling, marketing, and sale of the Class Products, as alleged herein, violates multiple federal and California laws, rules, and regulations, as detailed below.

46.    This action seeks, among other things, equitable and injunctive relief; public injunctive relief; restitution of all amounts unlawfully retained by Defendant; and disgorgement of all ill-gotten profits resulting from Defendant's alleged wrongdoing.

47.    Unless enjoined, Defendant's unfair, deceptive and unlawful conduct will continue into the future, and Plaintiffs and Class members will continue to suffer harm.

## FACTUAL ALLEGATIONS

48.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further allege as follows:

49.    At all relevant times, including as of the filing of this Complaint, Defendant

has made material misrepresentations regarding the Class Products.

**A. False and Unqualified U.S. Origin Claims**

50.    Defendant produces, markets, and advertises all or nearly all of its products, including the products purchased by Plaintiffs, as "Made in the USA," without clear or adequate qualification.

51.    Despite their unqualified "Made in the USA" representations, the MUSA Products are made using ingredients and components that are neither domestically grown, sourced, nor produced.

52.    Regardless of where the Defendant placed its unqualified "Made in the USA" representations on the MUSA Products, these representations would still violate the MUSA Rule as discussed above.

53.    However, in the case of the MUSA Products, the claim is highly impactful and intentionally placed on the PDP—the most prominent and conspicuous location for a consumer packaged goods company to present a claim.

54.    A product's PDP is the part that faces the consumer when placed on a shelf or displayed on a website, allowing the consumer to view its claims without needing to turn the product around.

55.    Consumer packaged goods companies typically place what they consider to be their most important and highest-value selling points on a product's PDP.

56.    In the case of the MUSA Products, the Defendant's unqualified claim appears directly above one of the most important features of a product's PDP—the size or quantity of the product. The claim is presented in capitalized text stating "MADE IN THE USA," isolated from other wording and displayed in contrasting text, further reinforcing the Defendant's intent to convey that the MUSA Products and their ingredients are of U.S. origin.

57.    Below are non-exhaustive examples of the aforementioned representation that appears on the packaging of the MUSA Products:





58.    This representation is prominently displayed in the same location on the packaging of all MUSA Products or, in some cases, in another conspicuous location on the product label.

59.    As a result of the "Made in the USA" representations on the MUSA Products' PDPs, online retailers have further propagated this misrepresentation through their websites' product pictures and descriptions, in addition to continuing to sell the MUSA Products with unqualified "Made in the USA" misrepresentations on their

1   shelves, where applicable.

2   60.    Below are non-exhaustive examples of the aforementioned representations

3   that appear on third-party retailers' websites[5]:





61.    Upon information and belief, the unqualified "Made in the USA" claim, or a

similar representation, was also made on another panel of certain MUSA Products.

---

[5] *See* https://www.walgreens.com/store/c/chi-infra-texture-dual-action-hair-spray/ID=prod6025278-product; and https://www.target.com/p/chi-keratin-shampoo-conditioner-64-fl-oz-2pc/-/A-80022901#lnk=sametab (last accessed February 20, 2025)

62.    As a result of the unqualified U.S. origin claims on the MUSA Products' packaging, consumers have been misled for years, leading to both initial and repeat purchases of products they believed were made in the United States with ingredients and components sourced from the U.S.

63.    Despite the prominent and unqualified claim that the MUSA Class Products were "Made in the USA," they are substantially made with foreign ingredients, a fact that is not properly disclosed on the label, as required by the MUSA Rule and California law.

64.    For example, the CHI Infra Silk Infusion purchased by Plaintiff Torres contains hydrolyzed silk[6] which does not originate from the United States. Upon information and belief, the CHI Infra Silk products also contains additional ingredients and components, including its packaging, that are not sourced from the United States.

65.    Defendant's CHI Keratin Reconstructing Shampoo product purchased by Plaintiff Howard contains *Argania spinosa* (also known as *Sideroxylon spinosum*) kernal oil[7] and hydrolyzed silk, along with other ingredients and components which are not sourced from the United States. Despite this, its packaging prominently states "Made in the USA" without clear and adequate qualification.

66.    Defendant's CHI INFRA Thermal Protective Treatment product purchased by Plaintiff Howard contains hydrolyzed silk, which is not from the United States, despite the unqualified "Made in the USA" claim that appears on the PDP of the product. Upon information and belief, the product also contains additional ingredients and components, including its packaging, that are not sourced from the United States.

---

[6] *See* https://www.fao.org/faostat/en/#data/QCL/visualize (Select Item: Raw silk. According to the Food and Agriculture Organization of the United Nations, silk is not produced in commercial quantities in the United States.)

[7] *See* https://en.wikipedia.org/wiki/Sideroxylon_spinosum ("It is a tree endemic to the calcareous semi-desert Sous valley of southwestern Morocco and to the region of Tindouf in southwestern Algeria.")

67.    Numerous other products from Defendant make the same unqualified "Made in the USA" claims despite containing foreign ingredients. For example, Defendant's CHI Infra Moisture Therapy Shampoo, BioSilk Silk Therapy Shampoo, and BioSilk Silk Therapy Conditioner all contain hydrolyzed silk, which is not sourced from the United States, yet all three products make the same unqualified "Made in the USA" representations as the other MUSA Products.

68.    By failing to disclose the use of foreign ingredients and components, Defendant has unfairly and deceptively misrepresented the MUSA Products as being of purely U.S. origin.

69.    Defendant possesses superior knowledge of the true facts, which were not disclosed, thereby tolling the applicable statute of limitations.

70.    Some of the ingredients, components, and even packaging used by Defendant can be sourced either domestically or internationally—and since this information is exclusively known to Defendant at this time—Plaintiffs cannot fully allege the extent of Defendant's unqualified "Made in the USA" violations without further discovery. Nevertheless, Defendant's blatant and willful disregard for the laws discussed herein is well established by the aforementioned, non-exhaustive examples.

71.    Most consumers have limited awareness that products—along with their ingredients and components—labeled as made in the United States may, in fact, contain ingredients or components sourced, grown, or manufactured in foreign countries. This is a material factor in many purchasing decisions, as consumers believe they are buying superior goods while supporting American companies and jobs.

72.    American consumers generally perceive products, ingredients, and components of U.S. origin as being of higher quality than their foreign counterparts.

73.    Defendant either charged a premium for the MUSA Products compared to its competitors or gained a competitive advantage by having the MUSA Products

chosen over others based on false, unqualified "Made in the USA" claims. Federal rules and California laws are designed to protect consumers from such false representations and predatory conduct.

**B. False "Natural" Claims**

74.    Defendant produces, markets, and advertises certain of its products, including the products purchased by Plaintiff Howard, as being made with a specified percentage of natural ingredients

75.    Consumers, such as Plaintiff Howard, increasingly seek products marketed as "natural" because they believe these products are safer, healthier, and free from synthetic, chemically derived, or harmful ingredients. The growing demand for "natural" products is rooted in a desire for cleaner, more transparent options that align with a healthier lifestyle, including concerns about environmental sustainability and the reduction of exposure to potentially harmful chemicals.

76.    As a result, "natural" claims have become a significant factor in purchasing decisions, influencing consumers to choose products they believe are more environmentally friendly or beneficial to their overall well-being.

77.    Aware of this trend, Defendant sought to capitalize on consumers' preferences by promoting the Natural Products not merely with a vague or general "natural" claim, but with highly specific assertions of a high percentage of the product being "natural."

78.    The term "natural" conveys to a reasonable consumer that ingredients—such as those used in Natural Products—are not chemically or synthetically produced, are derived from nature without the use of synthetic chemicals, and are not so highly processed that any connection to natural ingredients is completely lost.

79.    A reasonable consumer understands that when they purchase a product—especially a personal care product—that claims to be "natural," they are reducing their exposure to chemicals and contributing to the reduction of chemical use in the consumer goods industry, thereby helping the environment.

80.    Similar to its placement of the "Made in the USA" claim on the PDPs of the MUSA Products, Defendant prominently displays specific percentage "natural" claims on the PDPs of the Natural Products.

81.    Below are non-exhaustive examples of the aforementioned representation that appears on the packaging of the Natural Products.













82.    Defendant's misleading percentage natural representations were designed to convince consumers that the Natural Products were composed of a greater proportion of natural ingredients than they actually contained, thus exploiting consumers' trust in the "natural" label and influencing their purchasing decisions.

83.    Despite their "natural" percentage claims, the Natural Products—including those purchased by Plaintiff Howard—contain too many chemically or synthetically derived ingredients, or ingredient so highly processed, that any connection to nature is completely lost. As a result they cannot be the stated percentage of natural as they purport to be.

84.    As non-exhaustive examples of Defendant's "natural" misrepresentations, the bolded ingredients in the product ingredient lists below are not natural, yet Defendant claims that these products are 90% or more natural.

### CHI Keratin Reconstructing Shampoo (90% Natural Claim)

Aqua/Water/Eau, **Sodium C14-16 Olefin Sulfonate**, **Cocamidopropyl Betaine**, Glycerin, **Acrylates Copolymer**, **Polysorbate 20**, Keratin Amino Acids,

Hydrolyzed Ceratonia Siliqua Seed Extract, Argania Spinosa Kernel Oil, Simmondsia Chinensis (Jojoba) Seed Oil, Hydrolyzed Silk, **Panthenol**, **Disodium Laureth Sulfosuccinate**, **Caprylyl Glycol**, **Phenoxyethanol**, **Polyquaternium-10**, **Disodium EDTA**, **Glycol Distearate**, **Linoleamidopropyl PG-Dimonium Chloride Phosphate**, **PEG-8 Methyl Ether Dimethicone**, **Potassium Sorbate**, **PEG-150 Pentaerythrityl Tetrastearate**, **Hexylene Glycol**, **Steareth-4**, **PEG-6 Caprylic/Capric Glycerides**, **Citric Acid**, **P**olyquaternium-7, Zea Mays (Corn) Starch, **Guar Hydroxypropyltrimonium Chloride**, Fragrance (Parfum), Citronellol, Geraniol, **Hexyl Cinnamal**, **Hydroxycitronellal**, Limonene, Linalool

### CHI Infra Thermal Protective Treatment (92% Natural Claim)

Aqua/Water/Eau, Cetearyl Alcohol, Cetyl Alcohol, Glycerin, **Dicetyldimonium Chloride**, **Behentrimonium Chloride**, Hydrolyzed Silk, **Panthenol**, Anthemis Nobilis Flower Extract, Lavandula Angustifolia (Lavender) Flower Extract, Mentha Piperita (Peppermint) Leaf Extract, Salvia Sclarea (Clary) Extract, Symphytum Officinale Leaf Extract, Olea Europaea (Olive) Fruit Oil, **Amodimethicone**, **Caprylyl Glycol**, **Polysorbate 60**, **Phenoxyethanol**, **Quaternium-80**, **Polyquaternium-37**, **Propylene Glycol Dicaprylate/Dicaprate**, **Potassium Sorbate**, **Cetrimonium Chloride**, **Trideceth-10**, **Hexylene Glycol**, **PPG-1 Trideceth-6**, **Citric Acid**, Fragrance (Parfum), **Benzyl Benzoate**, **Hexyl Cinnamal**

### CHI Infra Moisture Therapy Shampoo (90% Natural Claim)

Aqua/Water/Eau, **Sodium C14-16 Olefin Sulfonate**, **Cocamidopropyl Betaine**, **Glycol Distearate**, **Disodium Laureth Sulfosuccinate**, Hydrolyzed Silk, **Panthenol**, Cocodimonium Hydroxypropyl Hydrolyzed Keratin, **Acrylates Copolymer**, **Caprylyl Glycol**, **Phenoxyethanol**, **PEG-150 Pentaerythrityl Tetrastearate**, **Polyquaternium-10**, **Disodium EDTA**, **PEG-6 Caprylic/Capric Glycerides**, **Potassium Sorbate**, **Hexylene Glycol**, **Citric Acid**, Fragrance

(Parfum), **Benzyl Benzoate**, **Hexyl Cinnamal**

85.    In addition to the bolded ingredients above, fragrance, citronellol, geraniol, cetearyl alcohol, and cetyl alcohol are often created synthetically for consistency purposes.

86.    Given the predominance and order of synthetic ingredients in the lists above, it is clear that the described products cannot be 90% (or more) natural. As the details regarding Defendant's specific formulations, including ingredient amounts, volumes, or other units of measure, are solely within Defendant's possession and control, discovery will corroborate these claims.

87.    Defendant possesses superior knowledge of the true facts, which were not disclosed, thereby tolling the applicable statute of limitations.

88.    Defendant's misleading use specificed percentage "natural" claims on the Natural Products deceives consumers into purchasing items that do not meet their expectations of natural ingredients, causing financial harm and undermining their trust in product labeling.

89.    On information and belief, Defendant either charged a premium for the Natural Products compared to its competitors or gained a competitive advantage by having the Natural Products chosen over others based on false "natural" claims. California laws are designed to protect consumers from such false representations and predatory conduct.

## FACTS SPECIFIC TO PLAINTIFF MARIANA TORRES

90.    On or about February 9, 2023, Plaintiff Torres searched online while at her home in Montclair, California looking to purchase hair care products that were made in the United States with ingredients sourced from the United States.

91.    While browsing various hair care products available for purchase online, Plaintiff Torres reviewed information and marketing materials about Defendant's CHI Infra Silk Infusion (the "Infusion Product"), which, on its PDP, claimed to be

"Made in the USA" without any qualification, despite containing foreign ingredients in its formulation.

92.     Relying on the unqualified "Made in the USA" representation on the Infusion Product, as any reasonable consumer would, and seeking to purchase a product made in the United States with domestic ingredients—especially since it is a personal care product—Plaintiff Torres purchased the Infusion Product for approximately $25.99 (excluding tax and shipping) from Amazon for her personal use.

93.     Plaintiff Torres's reliance on Defendant's unqualified "Made in the USA" representation was reasonable, as consumers are accustomed to seeing disclosures like "Made in the USA with globally sourced ingredients" or similar qualified variations on product packaging—if and when such U.S. origin claims are made. When consumers encounter an unqualified "Made in the USA" or similar claim, they reasonably assume the product contains no foreign-sourced ingredients or components.

94.     Defendant's representations regarding the MUSA Products (including the Infusion Product) were unfair, deceptive, and misleading, as the MUSA Products were actually made with and/or contained ingredients or components sourced, grown, or manufactured outside the United States.

95.     Accordingly, Defendant is not entitled to lawfully make unqualified representations that the products were "Made in the USA."

96.     Such unqualified representations that the Infusion Product was made in the USA, without qualification, were material to Plaintiff Torres's decision to purchase the product.

97.     Indeed, in deciding to purchase the Infusion Product, Plaintiff Torres relied on the labeling, marketing, and/or advertising prepared and approved by Defendant and its agents, as disseminated through the MUSA Products' packaging containing the misrepresentations alleged herein.

98.   Had Plaintiff Torres known that the Infusion Product, the MUSA Products, and their ingredients were not actually of U.S. origin, she would not have purchased the Infusion Product.

99.   In other words, Plaintiff Torres would not have purchased the Infusion Product but for the unqualified "Made in the USA" claim on the Infusion Product and MUSA Products.

100.   As a result, Plaintiff Torres was harmed because Defendant took Plaintiff Torres's money due to its false, unqualified, unfair, and deceptive "Made in the USA" representations on the Infusion Product and MUSA Products.

101.   Each time Plaintiff Torres and putative Class members purchased a MUSA Product, they relied on Defendant's unqualified U.S. origin representations in their purchasing decisions, as is typical of most U.S. consumers.

102.   Consequently, Plaintiff Torres and other similarly situated consumers were deceived by Defendant's actions.

103.   Plaintiff Torres believed, at the time of purchase, that the Infusion Product was of superior quality and that she was supporting U.S. jobs, the U.S. economy, the environment, and ethical working conditions by purchasing a product made with U.S.-sourced ingredients, rather than ingredients sourced, grown, or made outside the United States.

104.   Ingredients and components grown or manufactured in the USA are subject to strict regulatory requirements, including, but not limited to, agricultural, environmental, labor, safety, ethical, and quality standards.

105.   Foreign sourced, grown, or manufactured ingredients and components are not subject to the same U.S. standards and may pose greater risks to consumers, the environment, and the U.S. economy. This concern is especially significant for products intended for topical use, such as personal care products.

106.   Additionally, foreign-sourced, grown, or manufactured ingredients and components are generally of lower quality and less reliable than their U.S. origin

counterparts.

107.  False, unqualified, unfair and deceptive representations that products are "Made in the USA" reduce overall customer satisfaction compared to if such products were genuinely made in the U.S. using ingredients and components sourced, grown, or made domestically.

108.  As previously described, the MUSA Products, including the Infusion Product purchased by Plaintiff Torres, contain foreign ingredients and are not worth the purchase price paid by Plaintiff Torres and putative Class members.

109.  The precise amount of damages will be proven at the time of trial.

110.  Plaintiff Torres and Class members were harmed as a result of Defendant's false, unqualified, unfair and deceptive "Made in the USA" representations alleged herein.

111.  This false, unfair, and deceptive advertising of the MUSA Products by Defendant presents an ongoing threat to consumers, as Defendant's conduct continues to this day.

## FACTS SPECIFIC TO PLAINTIFF CRYSTAL HOWARD

100.  On or about August 5, 2024, while browsing hair care products at Marshalls in Sacramento, California, Plaintiff Howard observed three of Defendant's products available for purchase. The specific products were CHI Keratin Reconstructing Shampoo, CHI Infra Thermal Protective Treatment, and CHI Infra Moisture Therapy Shampoo (collectively, the "Howard Products").

101.  Each of the Howard Products, as represented on their PDPs, indicated that they were a specified percentage "natural"[8] and were, without qualification, "Made in the USA."

---

[8] Specifically, CHI Keratin Reconstructing Shampoo is represented as 90% natural, CHI Infra Thermal Protective Treatment as 92% natural, and CHI Infra Moisture Therapy Shampoo as 90% natural.

102.   Relying on the unqualified "Made in the USA" claim and the "natural" claims, as any reasonable consumer would, and intending to purchase a product that was both highly natural and made in the United States with domestic ingredients and components, Plaintiff Howard purchased the Howard Products for $7.99 each, excluding tax, from Marshalls for her personal use.

103.   Despite Defendant's representations that the Howard Products are 90% or more natural and "Made in the USA" without clear and adequate qualification of foreign ingredients, the Howard Products are not as natural as claimed and each contains foreign ingredients and components.

104.   Plaintiff Howard's reliance on Defendant's unqualified "Made in the USA" representation was reasonable, as consumers are accustomed to seeing disclosures like "Made in the USA with globally sourced ingredients" or similar qualified variations on product packaging-if and when such U.S. origin claims are made. When consumers encounter an unqualified "Made in the USA" or similar claim, they reasonably assume the product contains no foreign-sourced ingredients or components.

105.   Similarly, Plaintiff Howard's reliance on the Howard Products' "90% (or more) natural" claims was reasonable, as consumers are not experts in the true nature or origins of ingredients and have no reason to doubt such claims or suspect that a manufacturer would deliberately misrepresent synthetic, chemically derived, or otherwise non-natural ingredients to claim a higher percentage of "natural" than the product actually contains, especially when such claims are prominently displayed on products' PDPs.

106.   Defendant's unqualified "Made in the USA" representations regarding the Howard Products were false, unfair, deceptive, and misleading, as the Howard Products—and all other MUSA Products—are, in fact, made with foreign-sourced ingredients and components.

107.    Defendant's "natural" representations were also false, unfair, deceptive, and misleading, as the Howard Products—and all other Natural Products—actually contain more synthetic, chemically derived, or otherwise non-natural ingredients than they purport, contrary to the Howard Products' "90% (or more) natural" claims.

108.    Plaintiff Howard would not have purchased the Howard Products had she known that the products contained foreign-sourced ingredients or components and did not meet the percentage "natural" claims represented on their packaging.

109.    As a result, Plaintiff Howard was harmed because Defendant misrepresented the Howard Products as both "Made in the USA," without qualification, and "90% (or more) natural," leading Plaintiff Howard to purchase the products under false pretenses.

110.    Each time Plaintiff Howard and other similarly situated consumers purchased products like the Natural Products, they relied on Defendant's unqualified claims regarding the product's U.S. origin and percentage of natural ingredients, which misled them into believing they were purchasing a product that met these criteria.

111.    Consequently, Plaintiff Howard and other similarly situated consumers were deceived by Defendant's actions and suffered harm as a result.

112.    Upon information and belief, the Natural Products— including the ingredients used in these products—do not meet the quality or sourcing standards that consumers would expect from products claiming to be made in the USA, without qualification, or to contain a specified high percentage of natural ingredients.

113.    The false, unqualified "Made in the USA" and false specified percentage "natural" claims diminished the overall value of the Howard Products for Plaintiff Howard and other similarly situated consumers, who believed they were purchasing a higher-quality, more natural product based on these misrepresentations.

114.    Plaintiff Howard would not have purchased the Howard Products at the price paid, or at all, had she known that the products did not meet the expectations set by Defendant's false, unfair and deceptive marketing claims.

115. This false, unfair, and deceptive advertising of the Natural Products by Defendant continues to harm consumers and presents an ongoing threat, as Defendant's conduct persists to this day.

## CLASS ALLEGATIONS

112. Plaintiffs bring this action on behalf of Plaintiffs and all others similarly situated.

113. Plaintiffs are members of and seek to represent a Class, pursuant to Federal Rules of Civil Procedure, Rule 23(a), 23(b)(2) and 23(b)(3), defined as:

> All persons in California who purchased one or more of the Class Products, within four years prior to the filing of this Complaint, that were marketed or represented as "Made in the USA" or any derivative thereof on the product or in its marketing materials, but which contained ingredients or components not grown or manufactured in the USA.

114. Plaintiff Howard is a member of and seeks to represent a Sub-Class, pursuant to Federal Rules of Civil Procedure, Rule 23(a), 23(b)(2) and 23(b)(3), defined as:

> All persons in California who purchased one or more of the Natural Products, within four years prior to the filing of this Complaint, that were marketed or represented as being made with a specified percentage of natural ingredients, or any derivative thereof, on the product or in its marketing materials, but which contained a higher proportion of synthetic, chemically derived, or otherwise non-natural ingredients than was represented by the stated percentage.

115. The Class and Sub-Class shall be referred to herein jointly as the "Class."

116. Excluded from the Class are Defendant's officers, directors, and employees; any entity in which Defendant have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Further

excluded from the Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

117.   Plaintiffs reserve the right to modify the proposed Class definition, including but not limited to expanding the Class to protect additional individuals and to assert additional sub-classes as warranted by additional investigation.

118.   <u>Numerosity</u>: The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of members of the Class is unknown to Plaintiffs at this time, based on information and belief, the Class consists of thousands of individuals within California.

119.   <u>Commonality</u>: There are questions of law and fact common to the Class, which predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, without limitation:

- The nature, scope, and operations of the wrongful practices of Defendant;

- Whether the Class Products are or have been represented as being of U.S. origin without clear and adequate qualification;

- Whether the Natural Products are or have been marketed as more "natural" than they actually are;

- Whether Defendant knew or should have known that its business practices were unfair and/or unlawful;

-

- Whether Defendant was unjustly enriched by its unlawful, unfair and deceptive business practices;

- Whether Plaintiffs and members of the Class suffered monetary damages as a result of Defendant's conduct; and

- Whether Plaintiffs and members of the Class are entitled to injunctive relief, including public injunctive relief.

120.   <u>Typicality</u>: Plaintiffs' claims are typical of those of the Class. Both Plaintiffs

KAZEROUNI
LAW GROUP, APC

and all members of the Class have been harmed by Defendant's wrongful practices. Plaintiffs' claims arise from the same course of conduct that gave rise to the claims of the Class and are based on the same legal theories. Specifically, Plaintiffs purchased one or more Class Products from Defendant that were represented and/or advertised as: (1) "Made in the USA," or a derivative thereof, without clear and adequate qualification; and/or (2) more "natural" than they actually were, in the case of the Natural Products.

121.   <u>Adequacy of Representation</u>: Plaintiffs will fairly and adequately represent and protect the interests of members of the Class. Plaintiffs' Counsel are competent and experienced in litigating consumer class actions. Plaintiffs have retained counsel experienced in consumer protection law, including complex class action litigation involving unfair business practices. Plaintiffs have no adverse or antagonistic interests to those of the Class and will fairly and adequately protect the interests of the Class.  Plaintiffs' attorneys are not aware of any interests adverse or antagonistic to those of Plaintiffs and the proposed Class.

122.   <u>Predominance</u>: Defendant has engaged in a common course of conduct toward Plaintiffs and members of the Class, in that Plaintiffs and members of the Class were induced to purchase the Class Products. The common issues arising from Defendant's conduct affecting members of the Class set out above predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

123.   <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most members of the Class would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to

individual members of the Class, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

124.   Unless the Class is certified, Defendant will retain monies received as a result of Defendant's unlawful, unfair and deceptive conduct alleged herein. Unless a class-wide injunction is issued, Defendant will also likely continue to advertise, market, label, promote and package the Class Products in an unlawful, unfair, deceptive and misleading manner, and members of the Class will continue to be deceived, misled, harmed, and denied their rights under California law.

125.   Defendant has acted on grounds that apply generally to the Class, so that Class certification is appropriate.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violations of the Consumer Legal Remedies Act ("CLRA")**
**(Cal. Civ. Code § 1750, *et seq.*)**

126.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further allege as follows:

127.   California Civil Code Section 1750, *et seq.,* entitled the Consumers Legal Remedies Act ("CLRA"), provides a list of "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer."

128.   The Legislature's intent in promulgating the CLRA is expressed in Civil Code Section 1760, which provides, *inter alia,* that its terms are to be:

> Construed liberally and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protections.

129.   Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA because they extend to transactions that intended to result, or which have resulted in the sale of haircare products to consumers.

130.   Plaintiffs and the Class members are not sophisticated experts with independent knowledge of ingredient sourcing, product labeling and marketing practices.

131.   Plaintiffs and the Class members are California consumers who purchased Class Products for personal, family or household purposes.

132.   Defendant is a "person" as defined by Cal. Civ. Code § 1761(c).

133.   The Class Products that Plaintiffs and other Class members purchased from Defendant constitute "goods" as defined pursuant to Civil Code Section 1761(a).

134.   Plaintiffs, and the Class members, are each a "consumer" as defined pursuant to Civil Code Section 1761(d).

135.   Each of Plaintiffs' and the Class members' purchases of Defendant's products constituted a "transaction" as defined pursuant to Civil Code Section 1761(e).

136.   Civil Code Section 1770(a)(2), (4), (5), (7) and (9) of the CLRA provides that:

> The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
> (2) Misrepresenting the source, sponsorship, approval, or certification of goods or services;
> (4) Using deceptive representations or designations of geographic origin in connection with goods or services;
> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;

(7) Representing that goods or services are of a particular standard, quality, or grade…; [and]
(9) Advertising goods or services with intent not to sell them as advertised.

137.    Defendant failed to comply with Civil Code Section 1770(a)(2), (4), (5), (7) and (9) by marketing and representing that the Class Products are "Made in the USA," without qualification, when in fact they actually contain foreign sourced, grown or made ingredients and/or components.

138.    Additionally, Defendant violated Civil Code Section 1770(a)(2), (5), (7), and (9) by marketing and representing the Natural Products as more natural than they actually are. In reality, numerous synthetic, chemically derived, or otherwise non-natural ingredients in the Natural Products were deceptively characterized as "natural" to support misleading high-percentage natural claims.

139.    Plaintiffs further allege that the Defendant committed these acts with full awareness of the harm it would cause and engaged in such unfair and deceptive conduct despite this knowledge.

140.    Defendant knew or should have known that its representations about the Class Products, as described herein, violated federal regulations and state laws, including consumer protection laws, and that these statements would be relied upon by the Plaintiffs and Class members.

141.    As a direct and proximate result of Defendant's violations of Cal. Civ. Code §§ 1750, *et seq.*, Plaintiffs and each Class member have suffered harm by paying for the Class Products, which they would not have purchased had they known the products were unlawfully, unfairly, and deceptively labeled, contained foreign ingredients, and/or contained fewer natural ingredients than represented, in the case of the Natural Products.

142.    Plaintiffs and the Class suffered monetary harm as a result of Defendant's conduct because: (a) they would not have purchased the Class Products on the same

terms had it not been for Defendant's unlawful, unfair, and deceptive actions as set forth herein; (b) they paid a price premium for the Class Products or chose them over competing products due to Defendant's misrepresentations and deceptive packaging, which falsely claimed the products were "Made in the USA" without qualification, despite the inclusion of foreign ingredients and components; and/or (c) the products contained fewer natural ingredients than represented, in the case of the Natural Products.

143. Plaintiffs were therefore harmed because their money was taken by Defendant as a result of Defendant's false and unqualified "Made in the USA" representation on the labels of the Class Products, as well as Defendant's misleading claims regarding the Natural Products, which were falsely represented as more "natural" than they actually were. These misrepresentations included the deceptive labeling of the Natural Products as containing a high percentage of natural ingredients, despite the presence of numerous synthetic, chemically derived, or otherwise non-natural ingredients.

144. Plaintiffs and Class members reasonably relied upon Defendant's representations regarding the Class Products, and Plaintiffs and the Class reasonably expected that the Class Products would not be unlawfully labeled in a unfair, deceptive and misleading manner.

145. Thus, Plaintiffs and the Class reasonably relied to their detriment on Defendant's unfair, deceptive and misleading representations.

146. Pursuant to California Civil Code § 1782(a), on or about August 16, 2024, Plaintiffs sent Defendant a notice and demand for corrective action (the "CLRA Demand") via certified mail, informing Defendant of its violations of the CLRA and demanding that they cease and desist from such violations, as well as make full restitution by refunding all monies received in connection therewith.

147.  As the alleged violations were not cured by Defendant within 30 days of the CLRA Demand and remain unaddressed[9], Plaintiffs, on behalf of themselves and the Class, seek damages and attorneys' fees pursuant to California Civil Code § 1782(d).

148.  As a direct and proximate result of Defendant's violations of the CLRA, Plaintiffs and members of the Class are entitled to a declaration that Defendant violated the Consumer Legal Remedies Act.

149.  Under Cal. Civ. Code § 1780(a) and (b), Plaintiffs and the putative Class are entitled to, and hereby seek, injunctive relief to prohibit such conduct in the future, as well as damages.

150.  Attached hereto as **Exhibit B** are sworn declarations from Plaintiffs pursuant to Cal. Civ. Code § 1780(d).

## SECOND CAUSE OF ACTION
### Violations of California's Unfair Competition Law ("UCL")
### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

151.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further allege as follows:

152.  Plaintiffs bring this claim individually and on behalf of the Class for Defendant's violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.

153.  Plaintiffs and Defendant are each "person[s]" as defined by California Business & Professions Code § 17201.

154.  California Business & Professions Code § 17204 authorizes a private right of action on both an individual and representative basis.

155.  "Unfair competition" is defined by Business and Professions Code Section § 17200 as encompassing several types of business "wrongs," four of which are at issue here: (1) an "unlawful" business act or practice, (2) an "unfair" business act

---

[9] https://web.archive.org/web/20250306203204/https://chi.com/shop/categories/hair-care/

or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising."

156.   The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

157.   Through the conduct alleged in detail above and herein, Defendant engaged in unlawful, unfair, deceptive and/or fraudulent business practices in violation of Bus. & Prof. Code § 17200, *et seq*.

## A. *"Unlawful" Prong*

158.   Defendant has committed acts of unfair competition, including those described above, by engaging in a pattern of "unlawful" business practices, within the meaning of Bus. & Prof. Code § 17200 *et seq.*

159.   Defendant is alleged to have violated California law by falsely advertising, marketing, promoting, and selling the Class Products as "Made in the USA" without qualification of foreign ingredients and components, and by falsely advertising, marketing, promoting, and selling the Natural Products as more "natural" than they actually are.

160.   Specifically, by manufacturing, distributing, and/or marketing the Class Products and the Natural Products with false, unfair and deceptive claims, Defendant violates California's CLRA, Civil Code § 1750, *et seq.*; California's Made in the USA Statute, Bus. & Prof. Code §§ 17533.7; and/or the federal Made in USA Labeling Rule, 16 C.F.R. Part 323.

161.   Defendant falsely, unfairly and deceptively represents that the Class Products are "Made in the USA" without clear and adequate qualification, despite containing ingredients and/or components that are sourced, grown, or manufactured in foreign countries.

162.   Additionally, Defendant falsely, unfairly and deceptively represents that the Natural Products are more "natural" than they actually are.

163.   Aside from the unlawful conduct described herein, Defendant has other reasonably available alternatives to advance its business interests, such as accurately, truthfully, and lawfully marketing, labeling, and selling the Class Products.

164.   Instead, Defendant deliberately and deceptively misled consumers through unlawful and unfair practices for its own economic gain.

165.   Plaintiffs and Class members reserve the right to allege additional violations of law that constitute unlawful business practices or acts, as such conduct is ongoing and continues to this day.

### B. *"Unfair" Prong*

166.   Defendant has engaged in acts of unfair competition prohibited by Bus. & Prof. Code § 17200, *et seq*.

167.   Defendant engaged in a pattern of "unfair" business practices that violate both the letter and the intent of the statutes. Defendant's conduct threatens an incipient violation of the law or violates the policy and spirit of the law by manufacturing, distributing, and/or marketing its products with false, unfair and deceptive claims.

168.   Additionally, Defendant engaged in a pattern of "unfair" business practices that violate the wording and intent of the aforementioned statutes. These practices, which are immoral, unethical, and unscrupulous, have caused harm to consumers and run counter to public policy. The utility of such conduct, if any, is far outweighed by the damage it causes, particularly through the manufacturing, distribution, and/or marketing of the Class Products with unqualified, unfair, and deceptive "Made in the USA" claims and/or false "natural" claims.

169.   Defendant's conduct includes, but is not limited to, manufacturing, distributing, marketing, and/or advertising the Class Products with unqualified, unfair, and deceptive U.S. origin claims and/or false "natural" claims. As a result: (1) the injury to consumers was substantial; (2) the injury was not outweighed by

any countervailing benefits to consumers or competition; and (3) the injury was one that consumers could not have reasonably avoided.

170.    Without limitation, Defendant's knowing mislabeling and false and unlawful marketing of the Class Products constitute unfair and deceptive business practices, misleading consumers into believing they are purchasing products that are "Made in the USA" without foreign ingredients and/or products that are more "natural" than they actually are.

171.    Plaintiffs could not have reasonably avoided the resulting injury.

172.    Plaintiffs reserve the right to allege additional conduct that constitutes further unfair business acts or practices.

### C. *"Fraudulent" Prong*

173.    Defendant violated the "fraudulent" prong of the UCL by misleading Plaintiffs and the Class to believe that the Class Products and/or all its ingredients were made in the United States.

174.    Particularly, the Class Products are falsely represented as "Made in the USA" without clear and adequate qualification, despite the fact that they contain foreign sourced, grown or manufactured ingredients and/or components.

175.    Defendant also falsely represents the Natural Products as containing more "natural" ingredients than they actually do. Specifically, Defendant mischaracterizes certain ingredients as "natural" despite the fact that they are synthetic, chemically derived, or otherwise non-natural, to support its high-percentage natural claims.

176.    After receiving and acknowledging Plaintiffs' CLRA notice and demand, and refusing to correct these underlying claims, Defendant has shown its intent to continue the fraudulent advertising discussed herein.

177.    Relying on Defendant's misrepresentations, Plaintiffs purchased the Class Products.

178. Like Plaintiffs, Class members purchased the Class Products in reliance on Defendant's misrepresentations.

179. Plaintiffs and the Class are not sophisticated experts in ingredient sourcing, product labeling, marketing practices, or the regulations governing the Class Products.

180. Plaintiffs and members of the putative Class acted reasonably in purchasing the Class Products based on their belief that Defendant's representations were accurate, truthful and lawful.

181. Plaintiffs reserve the right to allege additional conduct that constitutes further fraudulent business acts or practices.

### D. *"Unfair, Deceptive, Untrue or Misleading Advertising" Prong*

182. Defendant's advertising is unfair, deceptive, untrue and misleading, as it leads consumers to believe that the Class Products are "Made in the USA" without clear and adequate qualification, despite containing foreign-sourced, grown, or manufactured ingredients and components. Defendant also falsely represents that the Natural Products contain more "natural" ingredients than they actually do.

183. Plaintiffs, as reasonable consumers, and the public were likely to be, and in fact were, deceived and misled by Defendant's labeling and marketing. They reasonably interpreted Defendant's representations according to their ordinary meaning—that the Class Products were "Made in the USA" without foreign ingredients or components, and/or that the Natural Products contained the stated percentage of "natural" ingredients.

184. Plaintiffs and the Class are not sophisticated experts in ingredient sourcing, product labeling, marketing practices, or the regulations governing the Class Products. They acted reasonably in purchasing the Class Products based on their belief that Defendant's representations were accurate, truthful and lawful.

185. Plaintiffs and the Class lost money or property as a result of Defendant's UCL violations because, at a minimum: (a) they would not have purchased the Class

Products on the same terms had they known the true facts about Defendant's representations; (b) they paid a price premium for the Class Products due to Defendant's alleged misrepresentations; (c) the Class Products were not made in the USA with U.S.-sourced ingredients and components as represented; and/or (d) the Natural Products were not as "natural" as they purported to be.

186.   Defendant's alleged unlawful, unfair, and deceptive business practices, along with their unfair, deceptive, untrue, or misleading advertising, present a continuing threat to the public as Defendant continues to engage in unlawful conduct that harms consumers.

187.   Such acts and omissions by Defendant are unlawful, unfair, and/or deceptive, constituting violations of Business & Professions Code §§ 17200, *et seq*. Plaintiffs reserves the right to identify additional violations by Defendant as may be uncovered through discovery.

188.   As a direct and proximate result of the acts and representations described above, Defendant has received and continues to receive unearned commercial benefits at the expense of its competitors and the public.

189.   As a direct and proximate result of Defendant's unlawful, unfair, and fraudulent conduct described herein, Defendant has been, and will continue to be, enriched by ill-gotten gains from customers, including Plaintiffs, who unwittingly provided money based on Defendant's misrepresentations.

190.   Plaintiffs were harmed because Defendant took Plaintiffs' money through unqualified, false, unfair, and deceptive representations made regarding the Class Products.

191.   The conduct of Defendant, as described above, demonstrates the need for injunctive relief to restrain such acts of unfair competition pursuant to California Business and Professions Code. Unless enjoined by the court, Defendant will retain the ability to, and may, continue engaging in unfair and deceptive competition and

misleading marketing. As a result, Plaintiffs and the Class are entitled to both injunctive and monetary relief.

192.   Plaintiffs would like to purchase the Class Products again but cannot be certain they will not be misled in the future unless and until Defendant makes the appropriate changes to the labeling and marketing of its Class Products, as requested herein.

193.   Pursuant to Bus. and Prof. Code § 17203, Plaintiffs and the proposed Class are entitled to, and hereby seek, injunctive relief to prevent Defendant from continuing the conduct in question. Additionally, Plaintiffs seek public injunctive relief to prevent Defendant from marketing and selling products as "Made in the USA" without clear and proper qualification, and from selling products represented as more "natural" than they actually are.

194.   In prosecuting this action to enforce important rights affecting the public interest, Plaintiffs seek the recovery of attorneys' fees and costs pursuant to, *inter alia*, Cal. Civ. Proc. Code § 1021.5.

### THIRD CAUSE OF ACTION
**Violations of California's False Advertising Law ("FAL")**
**(Cal. Bus. & Prof. Code §§ 17500, *et seq*.)**

195.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein and further allege as follows:

196.   California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... with intent … to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement...which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

197.   Defendant's material misrepresentations and omissions, as alleged herein, violate Bus. & Prof. Code § 17500, *et seq*. Defendant knew or should have known that these misrepresentations and omissions were false, unfair, deceptive, and misleading. This includes the unqualified representation that the Class Products were "Made in the USA" despite containing foreign-grown, sourced, or manufactured ingredients and components, as well as the false representation that the Natural Products are more "natural" than they actually are.

198.   Plaintiffs and the Class suffered tangible, concrete injuries as a result of Defendant's actions, as set forth herein, because they purchased the Class Products in reliance on Defendant's misrepresentations.

199.   As a result, pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiffs and members of the Class are entitled to injunctive relief, equitable relief, and restitution.

200.   Further, Plaintiffs and the members of the Class seek an order requiring Defendant to disclose the misrepresentations and request an order awarding Plaintiffs restitution for the money wrongfully acquired by Defendant through those misrepresentations.

201.   Additionally, Plaintiffs and the members of the Class seek an order requiring Defendant to pay attorneys' fees pursuant to, *inter alia*, Cal. Civ. Proc. Code § 1021.5.

## FOURTH CAUSE OF ACTION
### Breach of Express Warranty

202.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein and further allege as follows:

203.   Defendant represented to Plaintiffs and similarly situated consumers, through product packaging and marketing materials, that the Class Products were "Made in the USA" without any qualification and that the Natural Products contained more "natural" ingredients than they actually did.

204.   Defendant's representations regarding the unqualified U.S. origin of the Class Products and the alleged "natural" percentage composition of the Natural Products constitute affirmations of fact.

205.   Defendant's explicit claims that the Class Products are "Made in the USA" and that the Natural Products contain a specified percentage of "natural" ingredients pertain directly to the nature and composition of the products, forming a fundamental part of the bargain between Defendant and purchasers.

206.   Defendant's statements—featured prominently on the Class Products' PDP and marketing materials—constitute an express warranty regarding the products' U.S. origin, including their ingredients, as well as an express warranty that the Natural Products contain the stated percentage of "natural" ingredients.

207.   Relying on these express warranties, Plaintiffs and Class members purchased the Class Products, believing these warranties.

208.   Defendant breached its express warranties because the Class Products contained foreign-sourced ingredients and components, which were not disclosed with any qualification, contradicting Defendant's representations of an unqualified U.S. origin. Additionally, the Natural Products contained more non-natural ingredients than was purported on the products' labels.

209.   As a result of Defendant's breach, Plaintiffs and Class members suffered harm and are entitled to recover either the full purchase price of the Class Products or the difference between their actual value and the value they would have held if Defendant's representations regarding the Class Products had been accurate, truthful, and lawful.

210.   Plaintiffs and Class members did not receive the benefit of their bargain and sustained additional injuries, as alleged herein.

211.   Had Plaintiffs and Class members known the true nature of the Class Products, they either would not have purchased the products or would not have paid the price Defendant charged.

212. Defendant's misrepresentations were a substantial factor in causing Plaintiffs and the Class economic harm.

### FIFTH CAUSE OF ACTION
### Unjust Enrichment

213. Plaintiffs plead this unjust enrichment cause of action in the alternative to contract-based claims.

214. Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further allege as follows:

215. Under California law, the elements of unjust enrichment are the receipt of a benefit and the unjust retention of that benefit at the expense of another.

216. Plaintiffs and members of the Class conferred non-gratuitous benefits upon Defendant by purchasing the Class Products, which Defendant misrepresented as to their origin, ingredients and "natural" status.

217. Plaintiffs and members of the Class allege that Defendant owes them money for the unjust conduct described herein that resulted in the wrongful acquisition of funds.

218. An undue advantage was taken of Plaintiffs' and the Class's lack of knowledge of the deception, resulting in money being extracted to which Defendant had no legal right.

219. Defendant is therefore indebted to Plaintiffs and members of the Class in a specific sum—the amount of money each paid for the Class Products, which Defendant should not retain in equity and good conscience.

220. Defendant is therefore liable to Plaintiffs and members of the Class for the amount of unjust enrichment.

221. Defendant's retention of any benefit, whether directly or indirectly collected from Plaintiffs and members of the Class, violates principles of justice, equity, and good conscience.

222. As a result, Defendant has been and continues to be unjustly enriched.

223.   Plaintiffs and the Class are entitled to recover from Defendant all amounts that Defendant has wrongfully and improperly obtained, and Defendant should be required to disgorge to Plaintiffs and members of the Class the benefits is has unjustly received.

224.   Defendant accepted and retained such benefits with knowledge that Plaintiffs' and members of the Class's rights were being violated for financial gain. Defendant has been unjustly enriched by retaining the revenues and profits obtained from Plaintiffs and members of the Class, and such retention under these circumstances is both unjust and inequitable.

225.   As a direct and proximate result of Defendant's unlawful practices and the retention of monies paid by Plaintiffs and members of the Class, Plaintiffs and the Class have suffered concrete harm and injury.

226.   Defendant's retention of the non-gratuitous benefits conferred upon it by Plaintiffs and members of the Class would be unjust and inequitable.

227.   Plaintiffs and members of the Class are entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon Defendant, in a manner to be determined by this Court.

## SIXTH CAUSE OF ACTION
### Negligent Misrepresentation

228.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further allege as follows:

229.   Defendant represented to the public, including Plaintiffs and the Class, through its marketing, advertising, labeling, and other means, that the Class Products are "Made in the USA" without any qualification, and, in the case of the Natural Products, that they contain more natural ingredients than they actually do. These representations are misleading, as a substantial portion of the ingredients in the Class Products are sourced from outside the United States, and the Natural Products contain more non-natural ingredients than indicated on their PDPs.

230.   Plaintiffs allege that Defendant made these negligent, false and deceptive representations with the intent to induce the public, including Plaintiffs and the putative Class members, to purchase the Class Products.

231.   Plaintiffs and other similarly situated individuals saw, believed, and relied upon Defendant's negligent, false, unfair, and deceptive misrepresentations, and purchased the Class Products as a result of this reliance.

232.   At all relevant times, Defendant made the negligent, false, unfair, and deceptive misrepresentations alleged herein, knowing or reasonably having known that such representations were unfair, deceptive, inaccurate, and misleading.

233.   As a direct and proximate result of Defendant's negligent, false, unfair, and deceptive misrepresentations, Plaintiffs and similarly situated consumers were induced to purchase the Class Products, purchase more of them, pay a higher price, or choose them over competitors' products.

234.   Defendant's unlawful, unfair, and deceptive acts caused damages in an amount to be determined at trial for the Class Period.

## SEVENTH CAUSE OF ACTION
### Intentional Misrepresentation

235.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further allege as follows:

236.   Defendant knowingly represented to Plaintiffs and similarly situated individuals, through product labeling and marketing practices, that the Class Products were "Made in the USA" without any qualification regarding foreign ingredients, and that the Natural Products contained more "natural" ingredients than they actually did.

237.   Defendant acted intentionally by willfully and purposefully disseminating misrepresentations about the Class Products through labeling, online and offline marketing, advertising, and social media.

238.   However, as described above, Defendant's representations regarding the Class Products are false, unlawful, unfair, deceptive and/or misleading.

239.   Defendant knew that its representations regarding the Class Products were false, unlawful, unfair, deceptive, and/or misleading, yet continued to make such representations over a period of years, including after receipt of Plaintiffs' CLRA notice and demand letter.

240.   Defendant further knew that retailers were marketing the Class Products in false or misleading ways, as Defendant designed, manufactured, and affixed the product labeling to the Class Products before supplying them to the retailers.

241.   Plaintiffs and the putative Class members saw, believed, and relied on Defendant's misrepresentations when deciding to purchase the Class Products.

242.   As a direct and proximate result of Defendant's intentional misrepresentations, Plaintiffs and the putative Class members suffered damages in an amount to be determined at trial.

243.   By engaging in the acts described above, Plaintiffs and the putative Class are entitled to recover exemplary or punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for relief and judgment against Defendant as follows, seeking equitable relief in the alternative to legal relief:

- Certification of this action as a class action;
- Appointment of Plaintiffs as Class Representative;
- Appointment of Plaintiffs' attorneys as Class Counsel;
- That Defendant's wrongful conduct alleged herein be adjudged and decreed to violate the consumer protection statutes asserted herein;
- An Order declaring that Defendant's conduct violated the CLRA, California Civil Code §§ 1750, *et seq.*, and awarding injunctive relief pursuant to Cal. Civ. Code § 1780(a) and (b);

- An Order declaring that Defendant's conduct violated California's Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.*; and awarding injunctive relief pursuant to Bus. & Prof. Code § 17203;
- An Order requiring Defendant to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;
- An Order requiring the imposition of a constructive trust and/or disgorgement of Defendant's ill-gotten gains, compelling Defendant to pay restitution to Plaintiffs and all members of the Class, and to restore to Plaintiffs and Class members all funds acquired through any act or practice declared by this Court to be unlawful, fraudulent, unfair, or deceptive; in violation of laws, statutes, or regulations; or constituting unfair competition, along with pre- and post-judgment interest thereon;
- For pre and post-judgment interest on all amounts awarded;
- For an order of restitution and all other forms of equitable monetary relief, as pleaded, including awarding such relief pursuant to Bus. & Prof. Code § 17535; and/or Bus. & Prof. Code § 17203;
- Actual damages under California Civil Code § 1780(a);
- For public injunctive relief as pleaded or as the Court may deem proper;
- That Defendant be enjoined from continuing the wrongful conduct alleged herein and required to comply with all applicable laws;
- Punitive damages including under California Civil Code § 1780(a) and/or Cal. Civ. Code § 3294;
- General and compensatory damages in an amount to be determined at trial;
- That Plaintiffs and each of the other members of the Class recover their costs of suit, including reasonable attorneys' fees and expenses pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5 and California Civil Code § 1780; and

- That Plaintiffs and the members of the Class be granted any other relief the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

244. Plaintiffs, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: March 31, 2025                                   Respectfully submitted,

                                                        **KAZEROUNI LAW GROUP, APC**

                                                        By:  _/s/ Ryan L. McBride, Esq._
                                                        Ryan L. McBride, Esq.
                                                        *ATTORNEYS FOR PLAINTIFFS*